COTTON v. HELVERING, Commissioner of Internal Revenue.

Nos. 5879, 5880.

Court of Appeals of the District of Columbia.

Argued Nov. 9, 1933.

Decided Dec. 11, 1933.

Robert A. Littleton, of Washington, D. C., for petitioner.

G. A. Youngquist, Sewall Key, J. P. Jackson, C. M. Charest, E. Barrett Prettyman, and Nathan Gammon, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

PER CURIAM.

This is a petition to review a decision of the Board of Tax Appeals, sustaining the finding of the Commissioner of deficiencies against petitioner for the years 1927 and 1928.

The facts with which we are concerned are stated by the Board as follows: "The petitioner is the widow of Almon Cotton, who died March 5, 1922, leaving certain property and interests to which she succeeded. Included in such property was a mining lease in the State of Arkansas, which decedent acquired in 1919 and was engaged in developing at the time of his death. She continued such work until the fall of 1926, at which time, being convinced that the project was too expensive for profit, she abandoned it."

Petitioner insisted before the Board, and now insists, that the abandonment of the mine was in 1927 and not in 1926. If the finding of the Board that the abandonment was in 1926 is supported by substantial evidence, an affirmance must follow. We have, therefore, reviewed the entire evidence.

Section 214 (a) (4) of the Revenue Act of 1926, 44 Stat. 26, 26 USCA § 955 (a) (4), permits losses sustained in the taxable year to be deducted from gross income to determine the net, and article 143 of Regulations 69 covers the case of sudden termination of a business venture, and provides under certain conditions that the taxpayer may in such case, if loss results to capital assets, claim it as a deduction for the year in question.

Petitioner's husband, and afterwards petitioner, had up to 1926 expended $139,675.38 in development work on the lease. Petitioner and her husband had taken a deduction of the items embracing this total sum from year to year as an expense, but, after stopping work at the mine and on the theory that it was capital investment and not expense, she claimed the whole amount as a business loss in 1927. Hence, the question is, as we first suggested, Was the abandonment in 1926, as decided by the Board, or in 1927, as claimed by petitioner?

The evidence on the subject was given by petitioner's son, who was from the time of his father's death to the time of abandonment in complete charge of the mining operations. After describing the work done in the development of the mine and the results obtained, he testified: "We stopped operation in the latter part of 1926, because we began to have water on the 1,100 foot level and had to pull water each day for about twenty-four hours, and could not lower it." He likewise testified that the expense of getting electrical equipment necessary to handle the water was considerable, and that he did not feel like taking the responsibility of spending the money, and that this brought him to stop and to the conclusion that he would not go back after he had stopped. On cross-examination he was asked: "When you pulled out in 1926, that was the end of it?" And he replied: "Just about the end of it." And on redirect examination, he was asked: "In what year was it that mining property was finally abandoned or you finally decided to abandon it?" He replied: "1926." He then qualified this statement by saying that in 1926 he quit because he wanted to see what the rest of the folks—meaning his family—were going to say, and, on that line, he said that, after he had closed the place down, his mother and the other members of the family did not have much to say about it, except they thought he had "spent a lot of money." The last work done at the mine was in September, 1926. There was no direct evidence that the mine was abandoned in 1927, but petitioner insists it was, because of a provision of the lease that it should terminate six months after operations were abandoned. There was some evidence that a family conference occurred at Christmas 1926, but, if the purpose to abandon was then reached, the result would be the same. Nor do we think the fact that the lease did not lapse by its terms until 1927 is important. The question is rather one of fact to be determined by the circumstances surrounding the abandonment itself, and these circumstances, as we have narrated them, show, we think, quite clearly that, when the rise of water in the mine made further exploration impossible without the expenditure of large additional sums of money, and when in consequence petitioner's son and representative stopped the work and left the mine, the intent to abandon was then and there formed and was ratified by the family council at Christmas of the same year. Nothing whatever is shown to have happened subsequently which would negative this conclusion.

The decision of the Board is correct, and should be and is affirmed.

Affirmed.